RAWLS, Acting Chief Judge
(dissenting).
As I view the issues, appellant Ervin’s conviction of grand larceny should be reversed and set aside. This is so because the jury returned a verdict of guilty as to Count I of the information, and the evidence just does not support the verdict. Meanwhile, the jury returned a verdict of not guilty as to Count II, and as to that count, the evidence was sufficient to have supported a guilty verdict.
Around the first of June, 1974, Mrs. Deborah (Debbie) Witt, the principal prosecuting witness, began living with and supporting Ervin. She filed suit for divorce from her estranged husband on July 1,1974. She and Ervin planned to marry when her divorce was granted. On the night of September 11, 1974, Debbie and Ervin journeyed to Tallahassee and visited Debbie’s sister, Karen, primarily, for the purpose of borrowing $6,300.00 from Karen to buy a van. Karen, who had known Ervin since *852 the last of May, testified that Debbie and Ervin were planning on getting married as soon as her divorce was final and going out to Colorado. For this venture, they decided that they needed a van and the fastest way to get the money was from Karen. It was agreed between the three that Debbie would arrange to get $3,900.00 from her grandmother’s trust and that Ervin would supply the difference, repayment to be made in a few days. On the following day, Karen withdrew the sum of $6,300.00 and loaned it to Debbie,[1] and “they agreed that as soon as her money came in that she would bring it up to me and he would go to the bank and get his and bring his over, too.” In answer to the question on cross examination, “Now, to whom did you make the loan?”, Karen said, “To my sister.”
Ervin and Debbie departed Tallahassee with the $6,300.00 loan and went to Tampa. Debbie testified:
“• • • [W]e bought the vehicle,[2] the van, and we waited until mine [money] came. We got mine and we [went] up to pay her [Karen] back.
“Well, he was supposed to pay part of it, too, because I didn’t have enough. I had $3,900 and he was going to pay the rest of it. We got up there and he was going to go to the bank and to the K-Mart to pay off his boss because he owed him some money, too, he said. “. . .He took off . . and he just left and I had not seen him since until today.”
The sum and substance of the evidence is that Ervin took off with the van and Debbie’s $3,900.00, and the next time she saw him was at the instant trial.
Count I of the information charged Ervin as follows:
“. . . did then and there take, steal, and carry away from the lawful possession of the owner thereof, Karen Henry, certain personal property, to-wit: Good and lawful currency of the United States of America, of the value of more than $100.00 . .
The evidence wholly failed to support the charge. The uncontradicted facts are that Debbie borrowed from her sister, Karen, the sum of $6,300.00. That Ervin participated and was involved in the loan transaction is without dispute; however, the $6,300.00 was borrowed, not stolen, and the money was expended for the purpose for which it was borrowed.
As stated at the outset, sufficient evidence was presented by the state as to Ervin’s stealing more than $100.00 from Debbie which was the charge framed in Count II of the information. However, the jury’s verdict of not guilty exonerated Er-vin as to this count.
The trial judge erred in denying Ervin’s motion for directed verdict as to Count I on the grounds that the evidence was uncon-troverted that the $6,300.00 transaction was a loan from Karen. I would reverse with directions that appellant Ervin be discharged as to any sentence imposed in this cause.

. Karen testified, “I agreed to loan her [Debbie] the money.” Debbie testified, “So, we went to Tallahassee and I borrowed it from my sister with all intentions of paying her back in a few days when my money came.”

. Title to the van was placed in the names of Timothy L. Ervin and Deborah Ervin.